## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JONATHAN MOEHRING, ALEXIOUS MOEHRING, JANET MENDOZA, JERRY SPEER, and MARY SPEER, individually and on behalf of other similarly situated persons, | ) ) ) ) ) ) | Case No. 20-cv-2506 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | |
| Defendant | ) ) | |

## COMPLAINT

1.     Plaintiffs Jonathan Moehring, Alexious Moehring (the "Moehrings"), Janet Mendoza, Jerry Speer, and Mary Speer (the "Speers") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo").  On behalf of themselves and the class and subclass they seek to represent, Plaintiffs allege as follows:

## NATURE OF THE ACTION

2.     This is a class action on behalf of individuals and entities seeking redress for Wells Fargo's fraudulent and deceptive practices involving the manner in which Wells Fargo purchases and then seeks reimbursement for hazard insurance involving homes and residences that are the subject of foreclosure proceedings, and which are ultimately "redeemed" by the homeowners or their assignees.

3.     Through a deceptive pattern and practice going back years, Wells Fargo had charged individuals who redeem their homes after foreclosure sales for a full year of hazard insurance, even though just a small fraction of the insurance is typically used, and even though

insurance companies will typically reimburse a purchaser for unused insurance. Wells Fargo is unjustly enriching itself and misleading persons who are at their most financially vulnerable— homeowners who just lost their homes in foreclosure proceedings and are trying to struggle back and recover their homes.

### THE FORECLOSURE REDEMPTION PROCESS AND WELLS FARGO'S FRAUDULENT PRACTICES IN CONNECTION WITH THAT PROCESS

4.    In Kansas (and in a number of other states), homeowners who are foreclosed upon and lose their residences at foreclosure sales have the statutory right (in Kansas under K.S.A. § 60-2414) to "redeem" their properties—in effect buy back the properties from the purchasers (usually the lending banks) within a specified period of time.

5.    Redemptions in Kansas occur within either three months of the foreclosure sale, or 12 months after the sale, depending on the percentage of the original loan balance that remains outstanding.  The redemption period is three months if the borrower has paid less than one-third of the original mortgage balance.  If more than one-third has been paid, the period is 12 months. *See* K.S.A. § 60-2414(m).

6.    To redeem their property, homeowners must pay a sum equal to the sales price the property brought at the foreclosure sale plus certain costs incurred "[d]uring the period allowed for redemption" by the purchaser, including "taxes on the lands sold, insurance premiums on the improvements thereon, other sums necessary to prevent waste."  K.S.A. § 60-2414(d).

7.    As noted, one such reimbursable expense is hazard insurance. When Wells Fargo as a foreclosing bank is the successful bidder at a foreclosure sale, it sometimes purchases hazard insurance to protect the property following the sale. Wells Fargo typically buys coverage for a full year even though insurance can be purchased for shorter periods of time (such as one month).

8.     Prior to a redemption taking place, outside counsel for Wells Fargo prepares a redemption payoff statement. In redemptions involving the purchase of hazard insurance by Wells Fargo, counsel for the bank has the opportunity at that point to prorate the insurance amount. However, despite the fact virtually all expenses in typical real estate closings (including redemption closings) are prorated, Wells Fargo and its counsel willfully and intentionally decide as part of their wrongful scheme to not prorate hazard insurance. Similarly, Wells Fargo and its counsel do not affirmatively disclose that the redemption payoff amount reflects the purchase of insurance for a full year.

9.     Therefore, in redemptions in which Wells Fargo has purchased a full year of insurance, the redeeming homeowner is unwittingly charged that entire cost as part of the redemption even when the redemption occurs less than 12 months after the foreclosure.

10.    Following those redemptions, however, the insurance companies most likely reimburse Wells Fargo for the portion of the insurance that was not used, as is the custom for ordinary home insurance that is purchased but goes unused when the property changes ownership during the insurable period. For redemptions that occur within the three-month period permitted for, approximately 75% (or more) of the purchased insurance is not used. However, Wells Fargo does not return the reimbursed funds to the redeeming homeowners (or their assignees). Rather, it keeps the funds as an undeserved windfall even though the proceeds are unearned, fraudulently obtained, and rightfully belong to the homeowners.

11.    The amounts at issue are not *de minimis*. While the cost of a full year of hazard insurance varies depending on property value and other factors, amounts that are wrongfully assessed can range from just under $1,000 to many thousands of dollars.

12.   Plaintiffs assert putative class action claims on behalf of themselves and all members of the putative classes defined below.  Plaintiffs seek damages, restitution, and injunctive relief.

## PARTIES

13.   Plaintiff Jonathan Moehring is a citizen of Kansas who resides in Leavenworth, Kansas, and is over the age of 18.

14.   Plaintiff Alexious Moehring is a citizen of Kansas who resides in Leavenworth, Kansas, and is over the age of 18.

15.   Plaintiff Janet Mendoza is a citizen of Kansas who resides in Olathe, Kansas, and is over the age of 18.

16.   Plaintiff Jerry Speer is a citizen of Kansas who resides in Wichita, Kansas, and is over the age of 18.

17.   Plaintiff Mary Speer is a citizen of Kansas who resides in Wichita, Kansas, and is over the age of 18.

18.   Defendant Wells Fargo, N.A. is a national banking association, with its principal place of business located in San Francisco, California.

## JURISDICTION AND VENUE

19.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than 100 putative class members.  Plaintiffs, as well as most members of the proposed Nationwide Class and Kansas Subclass, are citizens of states different than Wells Fargo.

20.   Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district or, alternatively, under 28 U.S.C. § 1391(b)(3) because Wells Fargo is subject to the Court's personal jurisdiction with respect to this action.

21.   This Court has personal jurisdiction over Wells Fargo because the transactions or occurrences giving rise to this action occurred in Kansas.

## FACTUAL ALLEGATIONS

### A.   Janet Mendoza's Foreclosure and her Redemption of her Property

22.   On December 18, 2012, Wells Fargo commenced a foreclosure action in the District Court of Johnson County, Kansas against Janet Mendoza. Some eight years earlier Ms. Mendoza had obtained a loan secured by a mortgage on her residence located at 12809 Raintree Dr., Olathe, Kansas.  Wells Fargo's outside counsel in the foreclosure case was Kozeny & McCubbin, L.C., a large foreclosure law firm based in St. Louis.

23.   According to Wells Fargo's Foreclosure Petition, Ms. Mendoza had been delinquent on her loan payments since June 1, 2012.

24.   In its petition, Wells Fargo requested that the court enter judgment against Ms. Mendoza and  order "that the redemption period be fixed at three (3) months from the date of the Sheriff Sale" because "less than one-third (1/3) of the original indebtedness secured by the Mortgage has been paid."

25.   On April 15, 2013, the district court entered a judgment for foreclosure against the property and against Ms. Mendoza individually for $153,617.25, with $140,660.90 attributed to the unpaid principal balance, and the remainder to interest, attorneys' fees, and various other expenses.

26.   The district court's order further directed the Johnson County Sheriff to sell the property at a public auction if Ms. Mendoza did not satisfy the judgment balance within 14 days and, pursuant to Wells Fargo's request, ordered that Ms. Mendoza's redemption period be "set at three (3) months following the date of sale."

27.   Ms. Mendoza did not satisfy the judgment. Accordingly, on May 29, 2013, the sheriff conducted a public sale of the property, at which Wells Fargo purchased it for $93,365.63.

28.   The sheriff's sale triggered the commencement of the statutory period for which the property was subject to the right of redemption.  Pursuant to the district court's order, Ms. Mendoza's redemption rights were to expire three months later, on August 29, 2013.

**B.    Wells Fargo Includes the Cost of Excessive and Unused Insurance as Part of the Mendoza Redemption Payoff**

29.   Soon thereafter, on July 17, 2013, Wells Fargo filed with the district court a "Statement of Additional Expenses." In it, Wells Fargo represented that it had "incurred additional expenses in maintaining and preserving the property during the redemption period, specifically for Hazard Insurance" in the amount of $1,503.00 on June 21, 2012.

30.   That was false.  The $1,503.00 in hazard insurance that Wells Fargo represented it incurred in "preserving the property during the [3-month] redemption period" was in fact a premium for at least an entire year of coverage, not the three-month redemption period.

31.   Assuming Wells Fargo's $1,503.00 total accurately reflected the cost of insuring the property for one year, the figure overstated the costs of insuring the property during the redemption period—*i.e.*, the period running from the date of the foreclosure sale to the date that Ms. Mendoza redeemed the property—by approximately $889.45.

32.    Nevertheless, Wells Fargo represented to Ms. Mendoza and the district court that this entire expense was payable by Ms. Mendoza in order to exercise her redemption rights because it was incurred in "preserving the property during the [3-month] redemption period."

33.    When Plaintiff requested a redemption estimate, Wells Fargo informed her that she had to pay $97,872.78 to redeem the property, which consisted of the $93,365.63 sale price, accrued interest, and other expenses, including $1,503.00 for hazard insurance.

34.    Accordingly, and in reliance upon Wells Fargo's representations, Ms. Mendoza exercised her redemption rights in the foreclosed property by tendering $97,872.78 to the Clerk of the Johnson County District Court.

35.    On October 25, 2013, Wells Fargo filed a "Motion to Disburse Redemption Funds," informing the court that Ms. Mendoza had redeemed the property and had paid redemption funds into the court. Wells Fargo asked the court to order the disbursement of redemption funds totaling $97,872.78 to Wells Fargo.

36.    Wells Fargo likely cancelled, or certainly could have cancelled, the hazard insurance on or around October 25, 2013, immediately after Ms. Mendoza exercised her redemption rights and thereby extinguished Wells Fargo's insurable interest in the property.

37.    Wells Fargo therefore likely did, or could have, received a refund of approximately $885.33 in unearned premium upon termination of the policy, even though the cost of such unused insurance was paid for by Ms. Mendoza.

38.    Ms. Mendoza first learned that she had been fraudulently overcharged for hazard insurance on or around January of 2020.

39.    Whether or not Wells Fargo received a refund of unearned hazard insurance premium, Ms. Mendoza has suffered damage by paying excess hazard insurance premium in

reliance on Wells Fargo's representations that such costs were incurred in "preserving the property during the [3-month] redemption period," when they were not, in fact, attributable to property preservation during the redemption period and thus were not reimbursable under K.S.A. § 60-2414(d).

### C.    The Speers' Foreclosure and their Redemption of their Property

40.    On November 6, 2012, Wells Fargo commenced a foreclosure action in the District Court of Sedgwick County, Kansas against Jerry and Mary Speer. Some ten years earlier the Speers had obtained a loan secured by a mortgage on their residence located at 2820 West 27th Street South, Wichita, Kansas. Wells Fargo's outside counsel in the foreclosure case was Kozeny & McCubbin, L.C., the same firm involved in Janet Mendoza's foreclosure.

41.    According to Wells Fargo's Foreclosure Petition, the Speers had been delinquent on their loan payments since June 1, 2012.

42.    In its petition, Wells Fargo requested that the court enter judgment against the Speers and  order "that the period of redemption be fixed at three (3) months from the date of Sale" because "less than one-third (1/3) of the original indebtedness secured by said Mortgage has been paid."

43.    On December 27, 2012, the district court entered a judgment for foreclosure against the property and against the Speers individually for $67,059.74, with $60,696.11 attributed to the unpaid principal balance, and the remainder to interest, attorneys' fees, and various other expenses.

44.    The district court's order further directed the Sedgwick County Sheriff to sell the property at a public auction if the Speers did not satisfy the judgment balance within 14 days and, pursuant to Wells Fargo's request, ordered that the Speers redemption period be "set at three (3) months following the date of sale."

45.   The Speers did not satisfy the judgment. Accordingly, on February 27, 2013, the sheriff conducted a public sale of the property, at which Wells Fargo purchased it for $68,812.04.

46.   The sheriff's sale triggered the commencement of the statutory period for which the property was subject to the right of redemption.  Pursuant to the district court's order, the Speers' redemption rights were to expire three months later, on May 27, 2013.

**D.    Wells Fargo Includes the Cost of Excessive and Unused Insurance as Part of the Speer Redemption Payoff**

47.   Soon thereafter, on March 20, 2013, Wells Fargo filed with the district court a "Statement of Additional Expenses." In it, Wells Fargo represented that it had "incurred additional expenses in maintaining and preserving the property during the redemption period, specifically for Insurance" in the amount of $3,008.00.

48.   That was false.  The $3,008.00 in hazard insurance that Wells Fargo represented it incurred in "preserving the property during the redemption period" was in fact a premium for at least an entire year of coverage, not the redemption period.

49.   Assuming Wells Fargo's $3,008.00 total accurately reflected the cost of insuring the property for one year, the figure overstated the costs of insuring the property during the redemption period—*i.e.*, the period running from the date of the foreclosure sale to the date that the Speers redeemed the property—by approximately $ 2,826.70.

50.   Nevertheless, Wells Fargo represented to the Speers and the district court that this entire expense was payable by the Speers in order to exercise their redemption rights because it was incurred in "preserving the property during the redemption period."

51.   When the Speers requested a redemption estimate, Wells Fargo informed them that they had to pay $72,017.03 to redeem the property, which consisted of the $68,812.04 sale price, accrued interest, and other expenses, including $3,008.00 for hazard insurance.

52.   Accordingly, and in reliance upon Wells Fargo's representations, the Speers exercised their redemption rights in the foreclosed property by tendering $72,017.03 to the Clerk of the Sedgwick County District Court.

53.   On March 21, 2013, a "Notice of Redemption" was filed in which the court was informed that the Speers had redeemed the property and had paid redemption funds into the court.

54.   Wells Fargo likely cancelled, or certainly could have cancelled, the hazard insurance on or around March 21, 2013, immediately after the Speers exercised their redemption rights and thereby extinguished Wells Fargo's insurable interest in the property.

55.   Wells Fargo therefore likely did, or could have, received a refund of approximately $2,826.70 in unearned premium upon termination of the policy, even though the cost of such unused insurance was paid for by the Speers.

56.   The Speers first learned that they had been fraudulently overcharged for hazard insurance on or around January of 2020.

57.   Whether or not Wells Fargo received a refund of unearned hazard insurance premium, the Speers have suffered damage by paying excess hazard insurance premium in reliance on Wells Fargo's representations that such costs were incurred in "preserving the property during the redemption period," when they were not, in fact, attributable to property preservation during the redemption period and thus were not reimbursable under K.S.A. § 60-2414(d).

**E.    The Moehrings' Foreclosure and their Redemption of their Property**

58.   On January 9, 2017, Wells Fargo commenced a foreclosure action in the District Court of Johnson County, Kansas against Jonathan and Alexious Moehring. Some seven years earlier the Moehrings had obtained a loan secured by a mortgage on their residence located at 820 E. Johnson St., Olathe, Kansas. Wells Fargo's outside counsel in the foreclosure case was Kozeny & McCubbin, L.C., the same firm involved in Janet Mendoza's and the Speers' foreclosures.

59.   According to Wells Fargo's Foreclosure Petition, the Moehrings had been delinquent on their loan payments since July 1, 2016.

60.   In its petition, Wells Fargo requested that the court enter judgment against the Moehrings and  order "that the period of redemption be fixed at three (3) months from the date of the Sheriff Sale" because "less than one-third (1/3) of the original indebtedness secured by said Mortgage has been paid."

61.   On March 23, 2017, the district court entered a judgment for foreclosure against the property and against the Moehrings individually for $118,178.98, with $112,149.56 attributed to the unpaid principal balance, and the remainder to interest, attorneys' fees, and various other expenses.

62.   The district court's order further directed the Johnson County Sheriff to sell the property at a public auction if the Moehrings did not satisfy the judgment balance within 14 days and, pursuant to Wells Fargo's request, ordered that the Moehrings' redemption period be "set at three (3) months following the date of sale."

63.   The Moehrings did not satisfy the judgment. Accordingly, on June 7, 2017, the sheriff conducted a public sale of the property, at which Wells Fargo purchased it for $121,207.18.

64.   The sheriff's sale triggered the commencement of the statutory period for which the property was subject to the right of redemption.  Pursuant to the district court's order, the Moehrings' redemption rights were to expire three months later, on September 7, 2017.

**F.    Wells Fargo Includes the Cost of Excessive and Unused Insurance as Part of the Moehring Redemption Payoff**

65.   Soon thereafter, on July 7, 2017, Wells Fargo filed with the district court a "Statement of Additional Expenses." In it, Wells Fargo represented that it had "incurred additional

expenses in maintaining and preserving the property during the redemption period, specifically for Hazard Insurance" in the amount of $1,597.00 on June 28, 2017.

66.   That was false.  The $1,597.00 in hazard insurance that Wells Fargo represented it incurred in "preserving the property during the [*3-month*] redemption period" was in fact a premium for at least an entire year of coverage, not the three-month redemption period.

67.   Assuming Wells Fargo's $1,597.00 total accurately reflected the cost of insuring the property for one year, the figure overstated the costs of insuring the property during the redemption period—*i.e.*, the period running from the date of the foreclosure sale to the date that the Moehrings redeemed the property—by approximately $1,246.97

68.   Nevertheless, Wells Fargo represented to the Moehrings and the district court that this entire expense was payable by the Moehrings in order to exercise their redemption rights because it was incurred in "preserving the property during the [*3-month*] redemption period."

69.   When the Moehrings requested a redemption estimate, Wells Fargo informed them that they had to pay $125,166.72 to redeem the property, which consisted of the $121,207.18 sale price, accrued interest, and other expenses, including $1,597.00 for hazard insurance.

70.   Accordingly, and in reliance upon Wells Fargo's representations, the Moehrings exercised their redemption rights in the foreclosed property by tendering $125,166.72 to the Clerk of the Johnson County District Court.

71.   On September 25, 2017, Wells Fargo filed a "Motion to Disburse Redemption Funds," informing the court that the Moehrings had redeemed the property and had paid redemption funds into the court. Wells Fargo asked the court to order the disbursement of redemption funds totaling $125,166.72 to Wells Fargo.

72.    Wells Fargo likely cancelled, or certainly could have cancelled, the hazard insurance on or around September 25, 2017, immediately after the Moehrings exercised their redemption rights and thereby extinguished Wells Fargo's insurable interest in the property.

73.    Wells Fargo therefore likely did, or could have, received a refund of approximately $1,111.34 in unearned premium upon termination of the policy, even though the cost of such unused insurance was paid for by the Moehrings.

74.    The Moehrings first learned that they had been fraudulently overcharged for hazard insurance on or around January of 2020.

75.    Whether or not Wells Fargo received a refund of unearned hazard insurance premium, the Moehrings have suffered damage by paying excess hazard insurance premium in reliance on Wells Fargo's representations that such costs were incurred in "preserving the property during the [*3-month*] redemption period," when they were not, in fact, attributable to property preservation during the redemption period and thus were not reimbursable under K.S.A. § 60-2414(d).

G.    **Wells Fargo and Its Outside Counsel Were Aware Before the Moehring Redemption Proceedings Were Finalized that a Kansas Judge Had Ordered in a Nearly Identical Case that Hazard Insurance Should Be Charged on a Prorated Basis**

76.    In a foreclosure redemption case that was filed the year before the Moehring case (*Wells Fargo, N.A. v. Taylor-Hinds*, Case No. 16-CV05975) ("*Taylor-Hinds*"), Wells Fargo was ordered to prorate the cost of hazard insurance.

77.    As with the Moehring case, *Taylor-Hinds* involved Wells Fargo as the foreclosure defendant and involved Kozeny, McCubbin as Wells Fargo's outside counsel. The case was also filed in Johnson County state court.  The relevant facts from *Taylor-Hinds* include:

(a)  On April 5, 2017, Wells Fargo purchased the collateral property at the foreclosure sale and obtained hazard insurance for the property following the sale in the amount of $1,921.00. As with the Moehring case, Wells Fargo sought to recover the entire amount as part of a redemption payoff.

(b)  This time, however, the redeeming party was not the foreclosed homeowner, but a separate entity (Star Properties, LLC), which acquired the redemption rights from the homeowner, and was standing in the homeowner's shoes as assignee. Star Properties was represented by counsel and it filed an objection to Wells Fargo's efforts to collect various property protection advances, including the $1,921.00 amount for hazard insurance.

(c)  In the objection, filed June 26, 2017, Star Properties noted that Wells Fargo had not submitted any receipts or invoices documenting the various expenses as required by K.S.A. 60-2414(d). Regarding the hazard insurance, Star Properties objected to the total amount sought by Wells Fargo: "Plaintiff should not be entitled to claim any portion of funds advanced for hazard insurance for coverage beyond the date Star Properties, LLC redeemed the subject property, which was June 5, 2017."

(d)  On July 20, 2017, Wells Fargo responded to Star Properties' objection. It attached receipts for some of the property protection advances, but submitted nothing regarding the hazard insurance and made no response at all to Star Properties' argument that it should only have to pay for hazard insurance through the date of redemption. Rather, Wells Fargo stated: "Plaintiff's counsel is currently attempting to provide a receipt for these expenses and request additional time to do so.  Plaintiff will supplement this response when the receipts are provided." There is no indication from the court file that Wells Fargo ever submitted receipts and/or a substantive response to Star Properties' argument.

(e)    On September 6, 2017, Kansas District Court Judge Kevin Moriarty ruled that Wells Fargo was only entitled to payment of insurance costs through the redemption date: "The sums advanced by Plaintiff for hazard insurance for the subject property should be prorated to insure the property for two months, which prorated insurance premium is $320.16."

78.    Despite knowledge on the part of Wells Fargo's foreclosure counsel (and by extension, Wells Fargo), the bank's practice of misrepresenting annual hazard insurance premium as an expense reasonably incurred to preserve the property during the redemption period—and therefore payable by the redeeming party—continues to the current date.

79.    Plaintiffs' counsel has discovered a number of other foreclosure redemption cases in Kansas where Wells Fargo has perpetrated this same wrongful practice on other unsuspecting redeemers.

80.    Notably, when redeeming parties are represented by counsel (as in *Taylor-Hinds*), they have the ability to contest the excessive premium charges and, ultimately, only pay a prorated amount for insurance.

81.    In addition, Plaintiffs' counsel has discovered other foreclosure redemptions where Wells Fargo only charged a prorated amount (typically for several months) for insurance. But in the majority of those cases the redeemer was represented by counsel.

82.    Unfortunately, many redeemers are the foreclosed homeowners themselves, who almost by definition do not have the financial resources to retain counsel—a fact undoubtedly known and exploited by Wells Fargo. Wells Fargo thus preys upon unrepresented parties to charge them for annualized premiums, even though it is aware that no redeeming party would rationally pay more than they are required to pay by law to redeem the property.

## CLASS ACTION ALLEGATIONS

83.   <u>Description of the Classes</u>: Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals. Pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and (c)(4), as applicable, Plaintiffs seek certification of the following classes of individuals:

(a) The Nationwide Class:

> All residents of the United States who redeemed a property purchased in foreclosure by Wells Fargo and, in connection with that redemption, reimbursed Wells Fargo for property insurance premiums that were not prorated to reflect the period of ownership held by Wells Fargo.

(a) The Kansas Subclass:

> All residents of the United States who redeemed a property situated in Kansas that was purchased in foreclosure by Wells Fargo and, in connection with that redemption, reimbursed Wells Fargo for property insurance premiums that were not prorated to reflect the period of ownership held by Wells Fargo.
>
> Excluded from the classes are Wells Fargo's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the classes are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

84.   <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and members of the classes, and those questions substantially predominate:

> (a)  Whether Wells Fargo was unjustly enriched by the conduct and practices described herein;

(b) Whether Wells Fargo fraudulently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(c) Whether Wells Fargo negligently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(d) Whether Wells Fargo fraudulently failed to disclose facts pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(e) Whether Wells Fargo's misrepresentations and/or omissions pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period were material;

(f) Whether equity and good conscience requires that Wells Fargo make restitution to the Plaintiffs and the class members;

(g) Whether Plaintiffs and the class members are entitled to recover actual damages from Wells Fargo;

(h) Whether Plaintiffs and the class members are entitled to injunctive relief; and

(i) Whether Wells Fargo acted intentionally, maliciously, and/or recklessly when it undertook the conduct described herein, such that Plaintiffs and the class members are entitled to an award of punitive damages.

85. <u>Numerosity</u>: The proposed classes are so numerous that individual joinder of all members is impracticable.

86. All members of the proposed classes are ascertainable by objective criteria. Wells Fargo and/or its counsel or other agents have litigation and loan services records sufficient to

identify the members of the classes, and contact information which can be used to provide notice to the class members.

87. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the proposed classes. Plaintiffs and all members of the classes have been similarly affected by the actions of Wells Fargo.

88. <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of members of the classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so.

89. <u>Superiority of Class Action</u>: Plaintiffs and the members of the classes suffered, and will continue to suffer, harm by Wells Fargo's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the classes is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Wells Fargo's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

90.    By its statements, words, and/or acts, Wells Fargo suppressed the truth regarding the hazard insurance premiums assessed to, and paid by, Plaintiffs, the Nationwide Class members, and the Kansas Subclass members, including by:

(a)    affirmatively misrepresenting to Plaintiffs, the Nationwide Class members, and the Kansas Subclass members that the hazard insurance expenses it incurred were for maintenance and preservation of the redeemed property during their statutory redemption periods, when the charges in fact corresponded to a coverage term exceeding the specific redemption periods;

(b)    failing to substantiate such claimed expenses by receipts or vouchers filed with the clerk of the district court, as required by K.S.A. § 2414(d); and/or

(c)    affirmatively withholding from Plaintiffs, the Nationwide Class members, and the Kansas Subclass members the fact that Wells Fargo likely did, or could have, received refunds for hazard insurance that was not used and/or needed following the redemption of the properties.

91.    Because of Wells Fargo's misrepresentations, omissions, and general scheme to conceal the truth about the claimed hazard insurance premiums, Plaintiffs, the Nationwide Class members, and the Kansas Subclass members did not become aware, and could not have become aware through the exercise of reasonable diligence, of the facts described herein.

92.    Accordingly, the Court should toll the statutory limitations periods otherwise applicable to the claims of Plaintiffs, the Nationwide Class, and the Kansas Subclass under the doctrines of fraudulent concealment, equitable estoppel, and/or the discovery rule.

## COUNT I
### Unjust Enrichment
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

93.   Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

94.   Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

95.   Plaintiffs conferred a benefit on Wells Fargo when they tendered a redemption payment comprised in part of a full year's worth of prepaid hazard insurance premium on the redeemed property.

96.   Wells Fargo cancelled, or should have cancelled, the hazard insurance it procured upon Plaintiffs' exercise of their redemption rights, which extinguished any insurable interest Wells Fargo had in the property.

97.   Wells Fargo thus received or was entitled to receive a refund of portion of prepaid hazard premium that remained unearned at the time of the policy's cancellation.

98.   Wells Fargo nonetheless accepted, appreciated, retained such premium refund, or failed to exercise its rights to such a refund, with knowledge that it belonged to Plaintiffs.

99.   Wells Fargo's retention of the premium refund by is inequitable under the circumstances because, among other reasons, all costs of procuring such insurance were borne by Plaintiffs, not Wells Fargo, and because Wells Fargo's interests in the property or any income or expense reimbursements associated with it terminated when Plaintiffs tendered their redemption funds.

## COUNT II
### Fraudulent Misrepresentation
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

100. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

101. Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

102. Wells Fargo necessarily made representations to Plaintiffs regarding the amount of hazard insurance procured for maintenance and preservation of the property during the redemption period and regarding the amount Plaintiffs must pay to exercise their statutory redemption rights.

103. These representations were false—Wells Fargo overstated the amount Plaintiffs were required to pay in order to exercise their redemption rights by including a hazard insurance premium in Plaintiffs' redemption payoff amount that exceeded the term of the redemption period.

104. Wells Fargo intended that Plaintiffs rely on its representations to ascertain the total sum they must pay and expenses they must reimburse Wells Fargo in order to exercise their redemption rights.

105. Plaintiffs relied on the truth and accuracy of the information conveyed by Wells Fargo to ascertain the total sum they must pay and expenses they must reimburse Wells Fargo in order to exercise their redemption rights.

106. Plaintiffs sustained damages when they relied on the truth and accuracy of such information conveyed by Wells Fargo because, among other reasons, they reimbursed the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable the redemption period.

107. Wells Fargo acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

## COUNT III
### Negligent Misrepresentation
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

108. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

109. Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

110. Wells Fargo supplied false information to Plaintiffs for their guidance and benefit in ascertaining the amount they must pay to redeem property in foreclosure.

111. Specifically, Wells Fargo failed to exercise due care in ensuring that the hazard insurance premium included in Plaintiffs' redemption payoff amount accurately corresponded to the duration of the redemption period.

112. Plaintiffs relied on the truth and accuracy of the information conveyed by Wells Fargo regarding the nature and extent of reimbursable expenses included in Plaintiffs' redemption payoff amount.

113. Plaintiffs are within the class of persons whom Wells Fargo intended to guide when it supplied information regarding the nature and extent of reimbursable expenses included in Plaintiffs' redemption payoff amount or, alternatively, are within the class of persons to whom Wells Fargo knew such information would be communicated by another.

114. Plaintiffs sustained damages when they relied on the truth and accuracy of such information conveyed by Wells Fargo because, among other reasons, they reimbursed the costs of

a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

## COUNT IV
### Fraud by Silence
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

115. Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

116. Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

117. Wells Fargo had a duty to disclose material facts to Plaintiffs regarding nature and extent of reimbursable expenses added to Plaintiffs' redemption total, including: that the claimed hazard insurance expenses were annualized and not prorated to the actual duration of the redemption period; and/or that Wells Fargo and/or its agents received a refund of unearned premium to which Plaintiffs were entitled.

118. Wells Fargo's duty to disclose arises arise by law, including without limitation, under K.S.A. § 2414(d) 12 CFR § 1024.37(g), its superior and unique knowledge of the facts, it decision to speak, and litigant's and/or its counsel's duties of candor to the court.

119. Wells Fargo's duty to disclose also arises by virtue of its own culpability in creating Plaintiffs' mistaken belief that claimed hazard insurance were attributable to the redemption period.

120. Wells Fargo knew or had reason to know that the undisclosed information about the hazard insurance expenses were material to Plaintiffs' decision to tender a redemption payment inclusive of such expenses.

121. Wells Fargo intended that Plaintiffs rely on its silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiffs were not entitled to a refund of unearned premium upon termination of coverage.

122. Plaintiffs in fact relied on Wells Fargo's silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiffs were not entitled to a refund of unearned premium upon termination of coverage.

123. Plaintiffs have sustained damages directly and proximately caused by the foregoing conduct in an amount to be proven at trial, including by reimbursing the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

124. Wells Fargo acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed classes, respectfully request that this Court:

(a) Certify the Nationwide Class and the Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

(b) Appoint Plaintiffs as Class Representatives and their counsel as Class and Subclass Counsel pursuant to Federal Rule of Civil Procedure 23(g);

(c) Find Wells Fargo's conduct was unlawful as alleged herein;

(d) Enjoin Wells Fargo from engaging in further unlawful conduct as alleged herein;

(e)   Award Plaintiffs and the class members nominal, actual, compensatory, consequential, and punitive damages;

(f)   Award Plaintiffs and class members pre-judgment and post-judgment interest;

(g)   Award Plaintiffs and class members reasonable attorneys' fees, costs, and expenses; and

(h)   Grant such other relief as the Court deems just and proper.

\*       \*       \*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable and designate Kansas City, Kansas, as the place of trial.

Dated:  October 13, 2020.                              Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Bradley T. Wilders
Bradley T. Wilders  KS #78301
Michael R. Owens  KS #26747
460 Nichols Road, Ste. 200
Kansas City, Missouri 64112
Tel: 816-714-7100
wilders@stuevesiegel.com
owens@stuevesiegel.com

**SNYDER LAW FIRM LLC**

Paul D. Snyder   KS #14537
Karen E. Snyder KS #15424
Snyder Law Firm LLC
10995 Lowell Ave, Ste 710
Overland Park, KS 66210
Tel: 913-685-3900
psnyder@snyderlawfirmllc.com
ksnyder@snyderlawfirmllc.com

*Attorneys for Plaintiffs and
the Proposed Class*